# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:14-CV-589-RJC-DCK

| | |
|---|---|
| PRESERVATION PROFESSIONAL SERVICES, LLC, d/b/a PRESPRO; and JOURNEY INVESTMENT GROUP, LLC, )))) Plaintiffs, )) v. )) M2 PICTURES, LLC; and SCRIPPS NETWORKS INTERACTIVE, INC. d/b/a HOME AND GARDEN TELEVISION, )))))) Defendants. )) | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER IS BEFORE THE COURT** on "Defendant Scripps Networks Interactive, Inc. d/b/a Home And Garden Television's Motion To Dismiss" (Document No. 3), and Defendant M2 Pictures, LLC's "Motion To Dismiss" (Document No. 6). These motions have been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motions be <u>granted</u>.

## I. PROCEDURAL BACKGROUND

Preservation Professional Services, LLC ("PresPro") and Journey Investment Group, LLC ("Journey") (together, "Plaintiffs") filed a "First Amended Complaint" (Document No. 1-1) ("Complaint") in the Superior Court of Mecklenburg County, North Carolina on September 23, 2014. (Document No. 1). The Complaint asserts multiple claims against M2 Pictures, LLC ("M2") and Scripps Networks Interactive, Inc. ("Scripps") d/b/a Home And Garden Television ("HGTV") (together "Defendants") for: breach of contract; breach of implied covenant of good

faith and fair dealing; and unjust enrichment. (Document No. 1-1, pp.9-13). On October 22, 2014, Defendant M2, with the consent of Defendant Scripps, filed its "Notice Of Removal" (Document No. 1) to this Court.

Defendants' motions to dismiss were filed on October 29, 2014. (Document Nos. 3 and 6). Both motions seek dismissal pursuant to Fed.R.Civ.P. 12(b)(6). Id. Plaintiffs then sought, and were allowed, an extension of time to respond to the pending motions to dismiss. (Document Nos. 9 and 10). Plaintiffs' combined "…Memorandum Of Law In Opposition To Defendants' Motions To Dismiss" (Document No. 12) was filed on December 1, 2014. Defendant M2's "Reply Brief…" (Document No. 13) was filed on December 10, 2014, and "Defendant Scripps. . . Reply…" (Document No. 14) was filed on December 11, 2014.

The pending motions have now been fully briefed and are ripe for review and a recommendation to the Honorable Robert J. Conrad, Jr.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

#### A. Factual Background

The "First Amended Complaint" includes the following factual allegations. (Document No. 1-1).

Plaintiffs PresPro and Journey are limited liability companies organized and existing under the laws of North Carolina, with common principals, and doing business in Mecklenburg County, North Carolina. (Document No. 1-1, p.4). PresPro is in the business of providing general contracting services for residential properties, and Journey is in the business of purchasing, improving, and selling and/or renting residential properties. (Document No. 1-1, pp.4-5).

3

Defendant M2 is a limited liability company organized and existing under the laws of Virginia, and Defendant HGTV (or "Scripps") is an Ohio corporation. (Document No. 1-1, p.4). Relevant to the matters in this action, Defendants are alleged to have been doing business in North Carolina. Id.

According to Plaintiffs, HGTV hired M2 to provide production services on an HGTV television program called *Flip It Forward* ("FIF"). (Document No. 1-1, p.5). The premise of FIF was to find people (the "Cast Members") to purchase homes and repair and improve them with the help of the show's hosts, David and Jason Benham, thus increasing the value of the homes to the Cast Members' advantage. Id.

Defendants were referred to PresPro to assist with production of FIF, in or around March 2014. (Document No. 1-1, p.6). PresPro, at the request of FIF's executive producer Stephen Alvarez ("Alvarez"), became an HGTV approved contractor so it could provide services for FIF. Id. "HGTV and M2 promised PresPro that, in exchange for work on FIF, PresPro would be featured in FIF episodes as the general contractor on some of the homes and that Defendants would promote PresPro on FIF." Id.

Plaintiff Journey purchased homes located at 504 Ford Street, Kannapolis, North Carolina, and 6700 Duncroft Lane, Charlotte, North Carolina, on or about April 9 and 14, 2014, respectively. (Document No. 1-1, p.5). Journey sold these properties to Cast Members so they could be used on FIF. (Document No. 1-1, p.6). In addition, PresPro provided contracting services to these properties and to an additional property at 525 N. Rose Street, Kannapolis, North Carolina (together, the "PresPro Properties"). Id.

Plaintiffs allege that PresPro spent "hundreds of hours communicating and meeting with Defendants to work up and revise estimates for renovations on the PresPro Properties." (Document

4

No. 1-1, p.7). Defendants repeatedly asked PresPro to perform work for reduced compensation in exchange for promotion and advertising on FIF. Id. Induced by Defendants' promises, PresPro performed renovations on the PresPro Properties for reduced compensation. Id.

Plaintiffs further allege that in addition to construction services and scouting homes, Defendants assisted production of FIF in many other ways, including by: providing additional properties for filming; scheduling construction work to facilitate filming of FIF; performing work for Cast Members that was outside their respective contracts; and assisting in general management of construction for FIF. Id.

Plaintiff also engaged in more than thirty (30) meetings with Defendants and Cast Members to discuss renovation of another property at 11001 Holly Tree Lane, Charlotte, North Carolina, as well as 1463 Greenwood Lane, Rock Hill, South Carolina. (Document No. 1-1, pp.7-8). Ultimately, Defendants hired a different contractor at the Holly Tree Lane property. (Document No. 1-1, p.8). In addition to the time and resources Plaintiffs allegedly spent on various properties possibly related to FIF, they also engaged a public relations firm and spent money on promotional t-shirts in conjunction with FIF. Id.

In or around May 2014, HGTV cancelled FIF without notice or warning to PresPro or Journey, and Defendants abruptly stopped production of FIF and left North Carolina. Id. Afterwards, Defendants allege they spent extensive time and resources assisting the Cast Members and performed additional work for them at cost, or at a loss, to avoid damage to PresPro's reputation. Id. Thus, Plaintiffs contend they suffered damages that Defendants have failed and refused to compensate. Id.

Plaintiff's "First Amended Complaint" (Document No. 1-1) was then filed on September 23, 2014. Plaintiffs contend, *inter alia*, that there were valid and enforceable contracts between:

(1) PresPro and HGTV; (2) Journey and HGTV; (3) PresPro and M2; and (4) Journey and M2. (Document No. 1-1, pp.9-10). Plaintiffs further contend that all these contracts were breached, that each Defendant breached the implied covenant of good faith and fair dealing, and finally, that each Defendant was unjustly enriched. (Document No. 1-1, pp. 9-13).

  **B.**  **Analysis**

  Although Plaintiffs seem to suggest that there were four (4) valid and enforceable contracts between the parties that were breached by Defendants, the Complaint lacks any explanation of when or where any contract was formed, or the terms of such contract(s). (Document No. 1-1). Moreover, the allegations do not state whether the purported contracts were oral or written, how many there were, or who negotiated them. Id. The Complaint does not include copies of any purported contracts, invoices, emails, letters, or other documents; nor does it address the apparent absence of such documentation. Id.

  The closest the Complaint comes to describing any agreement is the following: "HGTV and M2 promised PresPro that, in exchange for **work on FIF**, PresPro would be **featured** in FIF episodes as the general contractor on **some of the homes** and that Defendants would **promote** PresPro on FIF." (Document No. 1-1, p.6, ¶ 22) (emphasis added). The terms of this alleged agreement are unclear: what exactly was the "work on FIF" the parties agreed PresPro would do, and was it completed; what would being "featured" and promoted on FIF entail; what did the parties intend by the language on "some" of the homes; and what if any or all the FIF episodes never aired. This alleged agreement/promise does not include Plaintiff Journey; however, Journey asserts causes of action against each Defendant for breach of "a valid and enforceable contract." (Document No. 1-1, pp.9-10).

In addition, Plaintiffs make other allegations that appear somewhat inconsistent with their claim for damages. The Complaint seems to report that Plaintiff Journey bought houses on April 9 and 14, 2014, and then was able to immediately sell those houses to Cast Members. (Document No. 1-1, pp.5-6). The Complaint further states that PresPro was "repeatedly asked . . . to perform work for reduced compensation in exchange for promotion and advertising on FIF" and that PresPro performed "work for Cast Members that was outside their respective contracts." (Document No. 1-1, p.7). Thus, it appears that Plaintiffs did receive compensation from Defendants and/or the Cast Members, and not just promises of some benefit(s) attached to FIF episodes. Id. See also (Document No. 12, p.4) ("M2 paid PresPro for the contracting services it provided with checks drawn from the 'M2 Pictures, LLC' bank account."). Moreover, it appears that Plaintiffs contracted with Cast Members (and were compensated) for work related to FIF, but the Complaint offers no details of those contracts. Id.

Later, the Complaint alleges for the first time within its final causes of action, that there was an "implied agreement" whereby "HGTV agreed to pay" PresPro and Journey, but "refused and/or failed to fully pay" them, and that M2 "refused and/or failed to fully pay" for benefits it obtained. (Document No. 1-1, p.12-13). It appears the alleged implied agreement (or agreements) is the basis for Plaintiffs' claims of unjust enrichment. Id. It is unclear what, if any, connection existed between the alleged implied agreement(s) to pay PresPro and Journey, and the alleged contract(s) allegedly breached regarding promises to feature/promote on FIF. (Document No. 1-1). There are no factual allegations describing the parties' alleged agreement regarding monetary payment(s) by either Defendant to PresPro or Journey. (Document No. 1-1, pp.4-8).

Plaintiffs allege that Defendant HGTV cancelled FIF in or around May 2014 "without notice or warning." (Document No. 1-1, p.5). Notably, Plaintiffs do not allege that HGTV was

7

required to provide them notice or warning before cancelling FIF; nor do they allege that M2 was involved in cancelling FIF. As discussed above, the closest the Complaint comes to describing an agreement involves alleged promises that Plaintiff PresPro will receive some benefit by being featured and/or promoted on FIF. Plaintiffs, however, fail to allege any term of a contract or agreement addressing the effect of a cancellation of FIF or other failure to air the proposed episodes. In fact, the allegations do not establish any time frame for when FIF would be televised and/or when PresPro would be featured or promoted.

Defendant HGTV makes a compelling argument that even if it had a duty to perform, such obligation was "premised upon a condition precedent–the actual airing of the FIF program." (Document No. 4, p.11) (citing Mosely v. WAM, Inc., 167 N.C.App. 594, 600 (2004) ("A condition precedent is a fact or event that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty.")). The crux of Plaintiffs' Complaint is that Defendants breached alleged contracts with them by failing to feature or promote Plaintiffs on a television series that has never aired.

Even viewing the Complaint in the light most favorable to Plaintiffs, the undersigned cannot find that the Complaint includes plausible allegations that either Defendant breached the terms of a valid and enforceable contract.

> In North Carolina, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 138 N.C.App. 19, 26, 530 S.E.2d 838, 843 (2000).[] Furthermore, every contract carries an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement. Bicycle Transit Auth., Inc. v. Bell, 314 N.C. 219, 228, (1985)).

Gandecha v. Metropolitan Property and Cas. Ins. Co., 2014 WL 4243797, at *3 (E.D.N.C. Aug. 26, 2014).

8

"To make a claim for breach of contract, a party must show the existence of an agreement, an obligation contained in that agreement that has not been fulfilled by the opposing party, and resulting injury to the non-breaching party." Tasz, Inc. v. Industrial Thermal Polymers, Ltd., 5:11-CV-150-RLV, 2015 WL 268500, at *6 (W.D.N.C. Jan. 21, 2015) (citing Harrington v. Perry, 103 N.C.App. 376, 406 S.E.2d 1, 2 (1991) (citing Cantrell v. Woodhill Enters., Inc., 273 N.C. 490, 160 S.E.2d 476, 481 (1968))). "It is a well-settled principle of contract law that a valid contract exists only where there has been a meeting of the minds as to all essential terms of the agreement." Pongo v. QBE First Ins. Agency, Inc., 3:13-CV-475-RJC-DCK, 2014 WL 836749, at *2 (W.D.N.C. March 4, 2014) (quoting Northington v. Michelotti, 464 S.E.2d 711, 714 (N.C.Ct.App.1995)).

> To constitute a valid contract, the parties "must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement."

Northington, 121 N.C. App. at 184, 464 S.E.2d at 714 (quoting Boyce v. McMahan, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974)).

Based on careful consideration of the Complaint, and the parties' briefs and cited authority, the undersigned agrees that Plaintiffs have failed to state a claim upon which relief may be granted for breach of contract. In short, it does not appear that Plaintiffs adequately allege a meeting of the minds as to all essential terms of an agreement.

The Complaint also fails to adequately allege breach of an implied covenant of good faith and fair dealing or unjust enrichment of Defendants. Again, Plaintiffs' allegations are insufficient to support these claims. See Iqbal, 556 U.S. at 678.

> "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." "Where

> the claim for breach of good faith is 'part and parcel' of a similar claim for breach of an express term of the contract claim, that claim will rise and fall with the other breach of contract claim." . . .
>
> the weight of North Carolina authority holds that a claim for breach of the covenant of good faith and fair dealing based on facts identical to those supporting a breach of contract claim should not be pursued separately.

BioSignia, Inc. v. LifeLine Screening of America, Ltd., 2014 WL 2968139, at *4-5 (M.D.N.C. July 1, 2014) (quoting Williams v. Craft Dev., LLC, 199 N.C.App. 500, 682 S.E.2d 719, 723 (2009) and Shalford v. Shelley's Jewelry, Inc., 127 F.Supp.2d 779, 787 (W.D.N.C. 2000)).

Plaintiffs' causes of action for breach of implied covenant of good faith and fair dealing incorporate the preceding factual allegations and again allege "valid and binding agreement[s]." (Document No. 1-1, pp.10-12). Thus, it appears that these claims are based on facts identical to those alleged to support the claims for breach of contract, and according to the authority cited above, should not be pursued separately. Moreover, like Plaintiffs' contract claims, the undersigned is not satisfied that Plaintiffs have plead sufficient factual content to survive a motion to dismiss.

> In order to state a claim for unjust enrichment, a plaintiff must allege facts demonstrating: (1) a measurable benefit conferred on defendant; (2) that the defendant consciously accepted; and (3) the benefit was not conferred on the defendant officiously or gratuitously. Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enters., LLC, ––– N.C.App. –––, 742 S.E.2d 555, 561 (N.C.Ct.App.2013); JPMorgan Chase Bank, Nat'l Ass'n v. Browning, ––– N.C.App. –––, 750 S.E.2d 555, 559 (N.C.Ct.App.2013); Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co., 211 N.C.App. 252, 712 S.E.2d 670, 677 (2011). A benefit is conferred officiously where it is conferred by interference in the affairs of the defendant in a manner that is unjustified under the circumstances. Browning, 750 S.E.2d at 559.
>
>> The doctrine of unjust enrichment was devised by equity to exact the return of or payment for, benefit received under circumstances where it would be

> unfair for the recipient to retain them without the contributor being repaid or compensated. More must be shown than that one party voluntarily benefited another or his property.
>
> Id. at 560 (internal quotations and citation omitted).

Mountain Land Properties, Inc. v. Lovell, 46 F.Supp.3d 609, 629 (W.D.N.C. 2014). "If there is a contract between the parties[,] the contract governs the claim and the law will not imply a contract." McCabe v. Abbott Laboratories, Inc., 47 F.Supp.3d 339, 348 (E.D.N.C. 2014) (quoting Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988)).

Here, Plaintiffs' unjust enrichment claims incorporate their previous allegations of valid and enforceable agreement(s)/contract(s) between the parties, and add a new allegation of "implied agreement[s]" between the parties. (Document No. 1-1, pp.12-13). As noted above, the Court is unable to discern how many different agreements Plaintiffs allege, or the terms of any such agreement. Plaintiffs' final causes of action assert there were "implied agreement[s]" with HGTV and M2 that Plaintiffs would each receive compensation for "real property, goods and services" of "substantial value" that they provided. Id. The Complaint's factual allegations do not describe any implied agreements or any alleged terms about compensation or payment by Defendants in exchange for real property, goods and services. (Document No. 1-1, pp.4-8). As previously noted, the Complaint, and subsequent arguments, suggest that Plaintiffs *did* receive payments from Defendants and/or Cast Members for their real property, goods and/or services. See (Document No. 12, p.4) ("M2 paid PresPro for the contracting services it provided . . .").

The undersigned also observes that Plaintiff's unjust enrichment claims were not pled in the alternative. (Document No. 1-1, pp.12-13). Defendant HGTV points to persuasive authority showing that "Plaintiffs cannot maintain an unjust enrichment claim while also arguing breach of an express contract." (Document No. 4, p.13) (citing Volumetrics Medical Imaging, Inc., v. ATL

11

Ultrasound, Inc., 243 F.Supp.2d 386, 411-12 (M.D.N.C. 2003)).  This authority appears consistent with McCabe cited above.

Plaintiffs' factual allegations are simply too vague and confusing to support a plausible claim that Plaintiffs provided a measureable benefit on either Defendant for which Plaintiffs were not repaid or compensated.  See Brown v. Prime Star Group, Inc., 3:12-CV-165-RJC, 2013 WL 3466883, at *5 (W.D.N.C. July 10, 2013) ("Plaintiff failed to sufficiently plead that any measurable benefit was conferred").

In considering the pending motions, the undersigned has viewed the Complaint in the light most favorable to Plaintiffs.  Nevertheless, the factual allegations are insufficient to support Plaintiffs' causes of action.  The allegations are vague and conclusory at best, and at times inconsistent and even contradictory.  Despite compelling arguments from each Defendant for dismissal, Plaintiffs did not seek to amend their Complaint, but continued to insist that the Complaint sets out "requisite detail."  (Document No. 12, p.2).  The undersigned respectfully disagrees with Plaintiffs' position.

## IV.  RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendant Scripps Networks Interactive, Inc. d/b/a Home And Garden Television's Motion To Dismiss" (Document No. 3), and Defendant M2 Pictures, LLC's "Motion To Dismiss" (Document No. 6) be **GRANTED**.

## V.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days**

of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

    **IT IS SO RECOMMENDED**.

Signed: May 4, 2015

_____
David C. Keesler
United States Magistrate Judge